# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BRUCE LAWRENCE KNIGGE and | ) | Case No. 11-41705-jwv13 |
| MARY ELLEN KNIGGE, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| BRUCE LAWRENCE KNIGGE and | ) | |
| MARY ELLEN KNIGGE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adv. No. 11-4127 |
| | ) | |
| SUNTRUST MORTGAGE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

On May 3, 2011, Debtors-Plaintiffs Bruce and Mary Knigge filed a two-count complaint against SunTrust Mortgage, Inc., seeking: 1) a determination that SunTrust does not have standing to enforce the promissory note or deed of trust underlying SunTrust's purported lien on the Debtors' residence, and 2) an order removing SunTrust's deed of trust from the chain of title as a cloud thereon. The Plaintiffs and the Defendant have each filed motions for summary judgment on both counts of the complaint.

For the reasons stated below, the Court will deny the Plaintiffs' motion for summary judgment and grant the Defendant's motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[1] A court should grant a motion for summary judgment unless the facts, when viewed in the light most favorable to the nonmoving party and all

---

[1] Fed. R. Civ. P. 56(c).

reasonable inferences which can be drawn therefrom, demonstrate that some genuine issue of fact exists.[2]

## UNCONTROVERTED FACTS

*The Note and Deed of Trust*

On December 15, 2003, Bruce and Mary Knigge executed a $143,582.00 promissory note ("Note") in favor of Mid America Mortgage Services of Kansas City, Inc., to finance the purchase of their residence at 14120 Lora Street, Smithville, Missouri 64089.[3] To secure payment of the Note, the Knigges executed a deed of trust ("Deed of Trust") granting Mid America a security interest in the residence. The Deed of Trust was recorded on December 16, 2003, in the Clay County Recorder's Office, and identifies Mortgage Electronic Registration Systems, Inc. (MERS), as "beneficiary" and "nominee for Lender."[4]

Sometime thereafter, Mid America sold the Note to the Defendant, SunTrust Mortgage, Inc. Prior to delivering the Note to SunTrust, Mid America endorsed it to SunTrust. That endorsement appears on the front of the Note. SunTrust received possession of the Note on or about January 22, 2004. Upon receipt of the Note, SunTrust endorsed it, in blank, on the back side of the Note. The Note does not contain an allonge. The original Note is currently in a fire proof safe in SunTrust's attorney's office and was previously made available to the Debtors' attorney for inspection and copying.

---

[2] *See Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996).

[3] The formal description of the property is: ALL OF LOT 20, WOODS COURT PLATE 1, A SUBDIVISION IN SMITHVILLE, CLAY COUNTY, MISSOURI, ACCORDING TO THE RECORDED PLAT THEREOF.

[4] Further facts regarding the structure of MERS and SunTrust's membership therein have been omitted inasmuch as they are irrelevant to the Court's decision here.

On January 29, 2004, SunTrust sold the Note to the Government National Mortgage Association (Ginnie Mae) but retained possession of the Note. On January 28, 2010, SunTrust repurchased the Note from Ginnie Mae.[5]

In sum, SunTrust has been in possession of the Note endorsed in blank from January 22, 2004, to the present.

*The Bankruptcy Proceedings*

On February 22, 2005, the Knigges filed a Chapter 13 bankruptcy petition initiating Case No. 05-41006. Schedule D attached to their Chapter 13 Petition identified "SunTrust Mortgage, Inc." as a secured creditor with a mortgage on real property located at 14120 Lora Street, Smithville, Missouri 64089. Paragraph 5 of the Chapter 13 Plan proposed by the Debtors identified SunTrust as the holder of a residential home mortgage to be paid as a long-term debt excepted from discharge. The Court confirmed the Plan on April 19, 2005.[6]

On December 10, 2007, SunTrust filed a Motion for Relief from Stay alleging, *inter alia*, that the Debtors had failed to make three monthly payments (which were to be made directly to SunTrust under the terms of the Debtors' Plan). The Debtors filed a response disputing the amount of the arrearage but, notably, they did not challenge the validity of SunTrust's secured claim or SunTrust's standing to enforce it. On January 1, 2008, the Debtors and SunTrust entered into a "Consent Order and Stipulation in Settlement of Defendant's Motion for Relief," wherein the Debtors consented to relief from the stay if they failed to make the payments required in the Consent Order. The parties entered into an Amended Consent Order on May 13, 2009, wherein the Debtors agreed to a payment plan to catch up on seven outstanding mortgage payments.

---

[5] The Debtors contend that SunTrust's sale to and repurchase of the Note from Ginnie Mae were essentially legal nullities because the Note remained in SunTrust's possession. Even if this proposition was true (and the Court is not convinced it is), the result would be that SunTrust has had (and continues to have) *possession and ownership* of the Note since January 22, 2004, when it purchased it from Mid America.

[6] SunTrust's treatment in the Plan did not change in any of the Debtors' six subsequent amendments to the Plan.

3

Case No. 05-41006 was closed on May 20, 2010, upon the Debtors' completion of their Chapter 13 Plan and receipt of a discharge.

On April 14, 2011, the Knigges filed another Chapter 13 bankruptcy petition, initiating the current case. Schedule D attached to Debtors' Petition again identified SunTrust Mortgage, Inc., as a secured creditor with a mortgage on the real property located at 14120 Lora Street, Smithville, Missouri 64089. The claim was not marked as "disputed," and the Debtors' Chapter 13 Plan provided for the payment of SunTrust's mortgage as a long-term, secured debt.[7]

The Debtors filed this adversary proceeding on May 3, 2011.

On June 9, 2011, SunTrust objected to confirmation of the Debtors' Chapter 13 Plan on the grounds that the Plan understated the amount of SunTrust's claim and did not provide for interest on the prepetition arrearage portion of the claim. Despite filing the adversary seeking to invalidate SunTrust's claim, the Debtors resolved SunTrust's objection by entering into an "Agreed Order in Settlement of SunTrust Mortgage, Inc.'s Objection to Confirmation," which adjusted the amount and interest rate of SunTrust's claim. Notably, the Order did not mention the adversary or reserve the Debtors' rights to contest SunTrust's claim through the adversary. The Agreed Order was entered on June 16, 2011.

## DISCUSSION

In the past few years, the courts have been witness to many abuses in the mortgage industry: forged paperwork, inflated claims, "robo-signers," etc. While it is incumbent on the Court to be vigilant for these abuses and to protect debtors from overreaching creditors, the Court must also be wary of debtors trying to ride the wave of anti-creditor sentiment to evade liability on valid claims, based on insignificant, technical irregularities, notwithstanding admissions that they borrowed money, secured the loan with a deed of trust, mortgage, etc., and have suffered no abuse by the lender whatsoever (*i.e.*, no improper foreclosure, no excessive fees, no nonfeasance or malfeasance). Notably, these debtors don't usually allege that they owe the money to a different entity or that a different entity has the standing to enforce a mortgage; rather, they seek to shed the lien and loan

---

[7] Later amendments to the Plan have not changed the classification or treatment of SunTrust's claim.

altogether – despite the fact they've suffered no harm other than the reality that they have to repay the loan to keep their property.

Another insidious aspect to this "gotcha" litigation – one that has reared its ugly head here – is when debtors play along with a creditor in the early part of a bankruptcy (or a prior bankruptcy) when it suits their purposes, *e.g.*, working out a payment plan to forestall relief from the automatic stay or settling a creditor's objection to confirmation, but then try to invalidate the creditor's secured claim when it becomes problematic or burdensome. Thankfully, the doctrine of judicial estoppel does not permit such conduct. And applied here, it warrants summary judgment in favor of the Defendant on both counts of the complaint. (Also, as discussed below, the Defendant is entitled to summary judgment based on the merits of its motion.)

**A.     The Debtors are judicially estopped from challenging SunTrust's secured claim.**

The doctrine of judicial estoppel prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.[8] It is "designed to preserve the dignity of the courts and insure order in judicial proceedings."[9] Because the doctrine's focus is on a court's integrity, judicial estoppel does not require proof of privity, reliance, or prejudice by the party invoking it.[10] Put simply, the doctrine is designed to prevent a party from playing " 'fast and loose with the courts.' "[11]

A review of the pleadings in the Debtors' current and prior bankruptcy cases[12] suggests that

---

[8] *See New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

[9] *Edwards v. Durham*, 346 S.W.2d 90, 101 (Mo. 1961).

[10] *See Monterey Development Corp. v. Lawyer's Title Ins. Corp.,* 4 F.3d 605, 609 (8th Cir. 1993).

[11] *Monterey Development Corp.*, 4 F.3d at 609 (quoting *Konstantinidis v. Chen*, 626 F.2d 933, 937 (D.C. Cir. 1980)).

[12] *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006) ("Judicial estoppel prevents a person who states facts under oath during the course of a trial from denying those facts in a second suit, even though the parties in the second suit may not be the same as those in the first."). Here, the parties in the second "suit," *i.e.*, bankruptcy case, are the same.

5

the Debtors are doing just that, significantly prejudicing SunTrust in the process. In addition to listing SunTrust's secured claim as undisputed on their Schedules in both cases, the Debtors have affirmatively acknowledged SunTrust's standing to enforce the Note and Deed of Trust at least three times.

In the Debtors' 2005 bankruptcy, the Debtors acknowledged the validity of SunTrust's secured claim (and its standing to pursue it) when they entered into consent orders with SunTrust on January 1, 2008, and May 13, 2009, agreeing each time to cure the arrearage owed to SunTrust to prevent SunTrust from obtaining relief from the automatic stay. And in this case, the Debtors' agreement to the order settling SunTrust's objection to confirmation constitutes yet another acknowledgment that SunTrust has a valid secured claim.

These orders do not explicitly recite that SunTrust has a valid secured claim, but that fact is implied in the Orders. If SunTrust did not have a secured claim, there would have been no good reason for the Debtors to make the agreements they did. Moreover, nothing in these orders indicates that the Debtors reserved their rights to challenge SunTrust's claim, lien, or standing at a later date. In the absence of such a reservation of rights, the Debtors cannot now take a position inconsistent with the position taken in those orders. In other words, the Debtors are judicially estopped from arguing in this adversary proceeding that SunTrust lacks the authority or standing to enforce the Note and Deed of Trust.

Moreover, as the Court held in *In re Washington*,[13] the consent orders granting SunTrust relief from the automatic stay bar the Debtors from challenging SunTrust's standing to enforce the Note and Deed of Trust as a matter of *res judicata*,[14] and the Agreed Order in Settlement of SunTrust Mortgage, Inc.'s Objection to Confirmation bars the Debtors' arguments here under the law of the case doctrine.[15] These holdings should come as no surprise to Debtors' counsel – he represented the

---

[13] *See In re Washington* case, --- B.R. ----, 2011 WL 6010247 (Bankr. W.D. Mo. December 1, 2011).

[14] *Id.* at *4-5 (holding that a debtor's consent to an order granting a creditor relief from the stay to enforce its lien bars relitigation of the issue of the creditor's standing to enforce that lien).

[15] *Id.* at *4.

6

debtor in *In re Washington*.

Consequently, the Debtors' motion for summary judgment must be denied and the Defendant's motion for summary judgment must be granted.

**2.  The Note is a negotiable instrument, and SunTrust, as the party in possession of that Note, has standing to enforce it.**

Turning to the merits, in its Motion for Summary Judgment SunTrust has advanced the straightforward argument that the Note is a bearer note, *i.e.*, endorsed in blank, and therefore, as the party in physical possession of the Note, SunTrust has standing to enforce it against the Debtors. SunTrust maintains that it is the valid assignee of the Deed of Trust and, therefore, has standing to enforce it. SunTrust also argues that, as the party in possession of the Note, SunTrust has the authority and standing to enforce the Deed of Trust, regardless of the validity of the assignment. Finally, since the Deed of Trust is valid, there is no basis to strike it from the land records as a cloud on title.

The Defendant's arguments are sound and supported by the uncontroverted facts. Borrowing again from *In re Washington*, the facts of which are analogous to this case:

> The Note is a negotiable instrument and is therefore subject to the Missouri Uniform commercial Code. Under Mo. Rev. Stat. § 400.3–301, a "Person entitled to enforce" an instrument is defined as "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 400.3-309 or 400.3-418(d). <u>A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.</u>" "Holder" with respect to a negotiable instrument, means the person in possession if the instrument is payable to bearer. If a negotiable instrument has been endorsed in blank, as the Note in this case has been, the instrument becomes payable to "bearer" and may be negotiated by transfer of possession alone." Finally, under Missouri law, a party entitled to enforce a note is also entitled to enforce the deed of trust securing that note, regardless of whether that transfer is recorded. Possession of the note insures that this creditor, and not an unknown one, is the one entitled to exercise rights under the deed of trust, and that the debtor will not be obligated to pay twice.[16]

The Debtors' argument in this case is that the analysis and holding in *In re Washington* are

---

[16] *Id.* at *5 (citations omitted, emphasis in original).

inapplicable because: 1) the Note hasn't been endorsed in blank because the purported blank endorsement is on an invalid allonge, and 2) even if the endorsement is valid, the Note is not a negotiable instrument under Missouri law.[17] These arguments are without merit, and the first is, frankly, preposterous considering Debtors' counsel was allowed to inspect and copy the original Note on October 14, 2011, at the deposition of SunTrust's corporate representative.

With regard to negotiability, the Debtors argue that the Note isn't negotiable under Missouri law because the Deed of Trust referred to in the Note requires the Debtors to perform a variety of undertakings beyond the payment of money, such as "occupy[ing] the property, refrain[ing] from wasting or destroying the property, maintain[ing] insurance on the property, and giv[ing] notice to Lender of any losses relating to the property."[18] These additional undertakings do not undermine the negotiability of the Note under Missouri law, which defines negotiable instruments as follows:

> (a) Except as provided in subsections (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> > (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

---

[17] Debtors' counsel chides the Court for not examining the negotiability of the promissory note in *In re Washington*, repeatedly citing an article by former University of Missouri law professor Dale Whitman for the proposition that "there is a general consensus among those devoting the time and effort necessary to understanding the negotiability of mortgage loans that the great majority of notes in the modern secondary mortgage market are non-negotiable." *See, e.g.*, Dale Whitman, *How Negotiability Has Fouled Up the Secondary Mortgage Market, and What To Do About It*, 37 Pepp. L. R. 737 (2010). The undersigned had the privilege of being a student in Professor Whitman's real property class. In any event, this criticism is ironic since counsel for Ms. Washington (and the Debtors in this case) never raised the negotiability of the note (or lack thereof) as an issue in that case.

[18] Debtors' Suggestions in Support of Summary Judgment, p. 7. In their reply brief, the Debtors identify additional obligations in the Deed of Trust that allegedly render the Note nonnegotiable. The Court will not consider these allegations, *see e.g., McGhee v. Pottawattamie County, Iowa* 547 F.3d 922 (8th Cir. 2008) (sustaining Iowa District Court's refusal to consider arguments first raised in a summary judgment reply brief), although considering them wouldn't change the outcome here; they are all related to the preservation of SunTrust's collateral and do not alter the unconditional nature of the promise to pay the amount due in the Note.

> (2) is payable on demand or at a definite time; and
>
> (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (I) *an undertaking or power to give, maintain, or protect collateral to secure payment*, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.[19]

All of the undertakings that the Debtors argue undermine the negotiability of the Note fall squarely under the exception provided in the italicized language, *i.e.*, those necessary to maintain or protect the collateral securing the Note.[20] Contrary to counsel's assertions, none of them alters the unconditional nature of the promise to pay the amount due in the Note. Therefore, the Court finds that the Note, validly endorsed in blank, is a negotiable instrument, and SunTrust, as the party in possession of the Note, has the right to enforce it and the Deed of Trust. Accordingly, there is no basis for striking the Deed of Trust from the land records of Clay County, Missouri as a cloud on title.

---

[19] Mo. Rev. Stat. § 400.3-104.

[20] *See Tower Grove Bank & Trust Co. v. Duing,* 346 Mo. 896, 144 S.W.2d 69, 71-72 (Mo. 1940) (rejecting the argument that a note was rendered nonnegotiable because it required compliance with a deed of trust, which in turn required "the payment of taxes, keeping the property insured, etc.").

## CONCLUSION

For the reasons stated above, the Debtors-Plaintiffs' Motion for summary judgment will be denied and the Defendant's Motion for Summary Judgment will be granted. The Clerk of the Court is directed to enter judgment in accordance with this Memorandum Opinion.

Dated this 30th day of April 2012.

/s/ Jerry W. Venters

United States Bankruptcy Judge

Counsel to be served electronically